## TAPPAN *v.* TAPPAN *&. a.*

Where questions of law, arising upon the trial of a cause, are transferred from the common pleas to this court for determination, an amendment of the case may be made in vacation, by the judge who tried the cause. Such an amendment may also be made by a judge after he has retired from the bench.

A plea of non-tenure or disclaimer is, in our practice, in the nature of a plea in abatement.

It is in the discretion of the court to allow such a plea to be filed at the fourth term after the entry of the action.

A party entering upon land under color of title is presumed to enter and occupy according to his title.

Upon an issue whether the occupants of land are or not joint tenants of the premises, conveyances of the same to them, under which they claim, are competent evidence as having a tendency to show the character and extent of the occupation.

In a writ of entry upon an issue of joint tenancy by the defendants, it is sufficient for the demandant to show that he owns and is entitled to the possession of the premises, and that the tenants are in the joint possession, claiming the property. He is not bound to go into the title of the tenants.

Where, in a writ of entry, an issue was made upon the joint tenancy of the defendants, and the court, in effect, instructed the jury that they should return a verdict for the defendants, unless they should find that the tenants were in possession of the premises, claiming under a common title, or by an agreement among them that the occupation should be by them in common for their joint benefit, for the life-time of any one—*held,* that the instructions thus limiting the matter submitted were erroneous.

WRIT OF ENTRY, brought to recover the possession of a tract of land in East Kingston, and entered at the September term, 1851, and continued from term to term until the September term, 1853. At the last-mentioned term, when the cause was about to be called for trial by the jury, the defendants pleaded severally the following pleas, to wit:

Nathaniel Tappan, one of the defendants, pleaded that on the day of the purchase of the writ, he was sole tenant of the demanded premises as of freehold, " without this that said John L. Tappan or George S. Tappan, the other defendants, had any thing in the demanded premises, and that

said Nathaniel did not disseize the plaintiff as alleged in the writ."

A similar plea was filed by John L. Tappan, another of the defendants, claiming to be sole tenant of the freehold, with a traverse of any estate of said Nathaniel or George therein, and a denial of the disseizin of the demandant by the said John. George S. Tappan, the other defendant, pleaded that he was sole tenant of ten acres, parcel of the demanded premises, as of freehold, with a traverse of any estate of the other defendants in said ten acres, a denial of the disseizin of the demandant by said George as to said ten acres, and *nil dicitur* as to the residue of the demanded premises.

The plaintiff objected to the reception of these pleas, on the ground that they are not the general issue, and not filed within the time limited by the rules of practice. The court overruled the objection, and permitted the pleas to be filed as the general issue. The plaintiff then moved that judgment be rendered against said George S., on the *nil dicitur*, for possession of all the demanded premises except the ten acres, and the motion was denied by the court. The counsel for the plaintiff then moved the court for time to reply to the pleas, and thereupon the cause was continued.

At the next succeeding term the plaintiff filed his replication that the defendants, at the time of the purchase of the writ, were joint tenants of the demanded premises as of freehold, and tendered an issue, which was joined. Upon the trial of this issue before the jury, the plaintiff introduced, without objection from the defendants, a deed from John Tappan of East Kingston to John Tappan of Claremont, of the demanded premises, and proved that said John Tappan of Claremont died, leaving the plaintiff, his only son and heir, and then introduced evidence tending to show that the defendants, at and prior to the date of the writ, were residing on the premises in one family,—the said Nathaniel being the father of the other two defendants,—and were jointly occupying the same, cultivating the land, harvesting the crops together,

and using and consuming the produce and stock kept on the premises as their joint property. Other facts were also proved by the plaintiff, having a tendency to show that the defendants, at the commencement of the suit and prior thereto, were in the joint occupation and possession of the premises. The defendants introduced evidence tending to show that George occupied and claimed to own the ten acres, and that Nathaniel occupied and claimed to own the residue of the demanded premises, and then introduced the will of said John Tappan of East Kingston, and several deeds, making, *prima facie*, a chain of title from said John to George, of the ten acres, and to Nathaniel of the residue of the demanded premises. To the admission of this evidence of title the plaintiffs objected, but the court overruled the objection, and admitted the evidence, as competent to be considered by the jury, on the question whether the defendants were in possession of the premises as joint tenants of the freehold, and for no other purpose.

The court instructed the jury that it was immaterial to the issue which of the parties had the better title to the demanded premises; that the only question for them to try was whether the defendants were, at the commencement of the suit, in the joint occupation and possession of the demanded premises, claiming the freehold; that the evidence of title introduced by the defendants was to be considered by them only as it might tend, in connection with the other evidence in the case, to explain the character of their possession; that if the defendants were in possession, under color of title to them, jointly, that would be evidence upon which the jury might find the issue for the plaintiff; that, on the other hand, if they were in possession, under color of title to them in severalty, unless it were controlled by other evidence, this would be evidence on which they might find the issue for the defendants; and that if the jury should find that the defendants, at the commencement of the suit, were in the possession of the premises, claiming under a

common title, or in virtue of any agreement or arrangement among them that the premises were to be occupied or improved by them in common, for their joint benefit, either for the lifetime of the father, Nathaniel, or of any other person, then their verdict should be for the plaintiff; otherwise for the defendants.

The jury returned a verdict for the defendants, and the plaintiff, having excepted to the foregoing rulings and instructions of the court, moved that the same might be set aside and a new trial granted.

After the judge who tried the cause had resigned his seat upon the bench, he made an amendment of the case by adding after the words " general issue," in the fifth line of the fourth paragraph, the following : " The court did this, knowing the contents of the pleas, and irrespective of the question whether the pleas were in abatement or in bar." In making this amendment, the judge stated he did it provided he had power so to do.

*Wells & Bacon*, for the plaintiff.

1. The plaintiff put in, without objection, a deed from John Tappan of East Kingston to John Tappan of Claremont, and showed title as heir.

The defendants, in attempting to show that they held in severalty, deduced a title under the will of John Tappan of East Kingston. His will could only operate at his decease. But he had conveyed the land in his lifetime, as appears by the case. The defendants have no title under his will. The evidence, therefore, shows that they are in as wrongdoers. On this evidence they are disseizors, and as such cannot qualify their own wrong by saying that they held as several wrong-doers, or as wrong-doers in severalty.

It is well settled that persons, entering by wrong, cannot qualify their wrong by alleging that they have a different estate from that of the party whom they have ousted. On the same principle, when they have taken possession jointly,

they cannot qualify their wrong by showing that their deeds, if valid, would give them several freeholds; and the jury should have been so instructed.

2.   The defendants, being in possession as one family, jointly cultivating the farm, as they are shown to have been by the plaintiff's evidence, if they allege that their occupation is several because they have several titles, it is material whether the defendants have a better title than the plaintiff, because their several possession is only to be shown by a several title, which is good.   A several color of title merely, which is invalid, and leaves them in possession wrongfully, cannot negative a joint tenancy of the freehold, when the possession is wrongful, and a disseizin, and that disseizin actually joint, the actual possession being joint.

It was material to the issue, therefore, which of the parties had the better title.   It might have been otherwise, if the actual possession had been several; but the defendants did not attempt to show that.

The instruction that the only question for the jury to try was whether the defendants were, at the commencement of the suit, in the joint occupation and possession of the demanded premises, claiming the freehold, might have been correct, if the question had been submitted to them upon the right basis.   But the color of title was submitted to them to explain the character of the possession, when the case shows the possession to have been wrongful, and when it was actually joint, and when the mere color, therefore, had no tendency to explain it.

The jury were told that if the defendants were in possession, under color of title to them in severalty, unless it were controlled by other evidence, this would be evidence on which they might find for the defendants; making the color of title material, when it was not material under the circumstances disclosed in the case; and, it may be said, making it conclusive, in fact, for in the manner in which it was left to the jury by the court there was nothing to control it.

3. The final instruction is wrong also, for if the defendants, at the commencement of the suit were, in fact, jointly in possession, it was immaterial whether they claimed under a common title or not, or whether there was any express agreement or arrangement among them or not.

The jury should have been instructed that they were to inquire whether the defendants possessed jointly or in severalty.

4. The court erred in receiving the pleas as the general issue. They are, in effect, pleas in abatement for misjoinder. This is shown by the issue joined and tried. If they were the general issue the issue should have been on the disseizin.

The court cannot render a judgment abating the writ, because the pleas have been received and tried as pleas in bar, to wit: as the general issue. The record shows this. But as the general issue the verdict settles nothing. There must, therefore, be judgment for the plaintiff *non obstante veredicto*, or a repleader awarded.

Treating the pleas as the general issue, the plaintiff is entitled to judgment notwithstanding the verdict, because the case shows that he has a title under the deed of John Tappan of East Kingston, and the defendants show no title except under his will, which can give them no title as against the plaintiff. They were permitted to put in title, and it is to be presumed put in their best title.

What the trial and verdict shows as matter of abatement to the suit can avail nothing under the general issue. The issue cannot be held to be immaterial, because it was the only regular issue which could have been joined on the pleas. It is not a case, therefore, for an order to replead. But it is quite clear that nothing has been tried and found, to entitle the defendants to a judgment in chief in bar of the action.

If these pleas are regarded as the general issue, a judgment for the tenants should bar the plaintiff's claim. But

there is nothing in the fact found, that the defendants were not joint tenants, having any tendency to bar the plaintiff's right.

5. We say, further, that the amendment of the case cannot be considered. The judge, having left the bench, had no right or power to make the amendment.

*Marston & Bell*, with whom was *Christie*, for the defendants.

It seems most convenient to take up the questions in the order in which they are stated in the case.

I. The case finds that the court allowed pleas of sole tenancy and several tenancy of the defendants to be filed (after the time specified in the rules of court for the filing of special pleas) " as the general issue."

And " that the court knew the contents of the pleas and admitted them, irrespective of the question whether they were pleas in abatement or in bar."

It can make no difference whether they were allowed to be filed as the general issue, or as pleas of any other kind, if the court had the right to permit them to be filed at that time. If the pleas are to be considered as pleas in abatement, it is believed that the court below had the power to allow them to be filed at any time, at their discretion. Cases often arise where the court would exercise this power; as in case a writ is not upon file or is missing, or in cases of accident and mistake. It is presumed that this court would not interfere to revise the orders of the court below, unless a strong case of hardship were made out, even if at all.

But there seem to be good reasons for receiving pleas of this description in bar of the action, in this State. Pleas of non-tenure, general and special, and disclaimers, are received as pleas in bar in Massachusetts; and the practice arose for a very excellent reason—that the time within which pleas in abatement were required to be filed was so short that in real actions where counsel need to be instructed with

special care, a defendant might be involved in unnecessary and protracted litigation, unless he were allowed a longer time to avail himself of such defence. The same considerations would apply to the present rules of practice in this State; although formerly our rules of practice were different. *Otis* v. *Warren*, 14 Mass. Rep. 239.

But even if the court erred in directing the pleas to be received, it is now too late for the plaintiff to take the exception. If he intended to avail himself of it, he should have put his exception in writing, and presented it to the court for allowance, at that term, (September term, 1853,) agreeably to the requirements of the statute. This he did not do. Comp. Stat. 437, § 25.

In that case the judge might have reconsidered his order, or the defendants' counsel might have withdrawn the motion, to prevent incumbering the case with the question; or the question might have been transferred and at once decided. But the plaintiff chose to risk his chance upon the issue tendered, and thereby secured himself no little advantage; for the judgment, if in his favor, would have been peremptory that he recover possession of the demanded premises.

But it is apprehended that the law does not give a party the right thus to lie by and secure a double advantage. By neglecting to except to the order, and by replying to the pleas, and going to trial thereon, the plaintiff waived his right to except, and it is now out of his power to do so, or to take advantage of any error in the order of the court.

II. The question in issue was, were the defendants, on the day of the purchase of the writ, joint tenants of the demanded premises, as of freehold?

Upon this issue no evidence could be relevant, except such as related to the single question of the character of the defendants' tenancy, whether it was joint or otherwise.

The plaintiff, however, put in evidence of title which was not relevant, but was not objected to; and on this irrelevant

evidence, in his argument, he founds some singular claims, which will be noticed in their order.

The plaintiff put in evidence tending to show that the defendants were joint tenants of the demanded premises. The defendants then put in evidence tending to show that they were tenants, the said George of only ten acres, and the said Nathaniel of the residue of the demanded premises. The defendants then offered evidence of a *prima facie* chain of title to the said George of said ten acres, and to said Nathaniel of said residue. To the admission of this evidence the plaintiff objected.

But even if the court had admitted it as evidence of title, it was admissible, to meet evidence of title which had been introduced by the plaintiff. And a new trial would not have been granted if the evidence had been so admitted generally. *Bank* v. *Woodward*, 5 N. H. Rep. 301–9.

The court, however, did not admit the evidence as evidence of title, but as bearing on the question whether the defendants were in possession of the premises as joint tenants or otherwise.

For this purpose, the evidence was admissible, upon all the authorities. Color of title, however defective, may be used as evidence by a party, to show the extent of his possession of land, and he is presumed to enter and occupy according to his title, and his possession to be adverse to all other titles. *Riley* v. *Jameson*, 3 N. H. Rep. 23 ; *Lund* v. *Parker*, 3 N. H. Rep. 49 ; *Waldron* v. *Tuttle*, 4 N. H. Rep. 375 ; *Towle* v. *Ayer*, 8 N. H. Rep. 59 ; *Breck* v. *Young*, 11 N. H. Rep. 485 ; *Bailey* v. *Carlton*, 12 N. H. Rep. 15.

And he is presumed to occupy no more than his title includes. *Hale* v. *Glidden*, 10 N. H. Rep. 397.

As the plaintiff's objections to the rulings, and instructions of the court to the jury, principally rest upon the evidence of the defendants, which was objected to, it may be convenient next to consider those objections.

The substance of the first objection is this : The plaintiff

has a good title to the premises, the defendants a defective one ; therefore the defendants are disseizors. Wrong doers cannot qualify their wrong by alleging they have a different estate from him they have ousted. On the same principle wrong doers cannot allege that they possess several parcels of the land of him they have ousted.

But the two cases are very different. Does the plaintiff mean to say that if A. sues B., a disseizor, for the possession of one hundred acres of land, B. is precluded from alleging that he is tenant of only ten acres of the land ? The language will admit of no other construction. The very statement of the proposition shows its unreasonableness and absurdity.

This objection, as well as others in the plaintiff's brief, assumes that the defendants were proved to have taken possession jointly, but the case finds that this was a contested point, and that there was evidence on both sides, exclusive of that objected to by the plaintiff.

The substance of the second objection is this : If the defendants offer to use their color of title to show the extent of their possession, it becomes material to know whether the plaintiff has a better title ; because if the defendants' is the defective title, it cannot be used against the good title, to show the extent of the respective occupation and claim of the defendants. But this question is settled by the authorities in our own reports already cited, that an invalid title may be set up by a party, to define the extent of his possession.

This objection also assumes that the defendants are proved to have occupied jointly, which the case negatives.

In the third objection the plaintiff admits that if the defendants had shown that their actual possession was several, the question of title would be immaterial. They did show this, as the jury have found ; therefore the second objection ought to be waived by the plaintiff.

The fourth objection makes the usual assumption, (i. e.

Tappan *v.* Tappan.

that the defendants were joint tenants,) and concludes with denying the authority of the cases already cited from our reports.

The instructions of the court to the jury, taken altogether, we think, were correct, and quite favorable enough to the plaintiff. The particular subject matters have already been considered.

The pleas were not joined nor tried as the general issue—the evidence and the verdict were as upon pleas of several and sole tenancy. The verdict settles this point, that the plaintiff had no right of action against the defendants as joint tenants.

There must therefore be judgment for the defendants that the writ abate.

The judge had full power to make the amendment.

EASTMAN, J. This action was tried at the February term, 1854, of the common pleas, by a gentleman who subsequently left the bench; and after his resignation an amendment of the case, as transferred to us, was made by him in December, 1854, which is probably material. The case, as originally drawn, stated that the court overruled the objections taken to the reception of the pleas, and permitted them · to be filed as the general issue. The amendment made adds that "the court did this knowing the contents of the pleas, and irrespective of the question whether the pleas were in abatement or in bar."

If the pleas offered were not the general issue, they could not, under our rules, have been filed, as a matter of right, at the time they were, the fourth term after the entry of the action, but the court, in its discretion, could receive them at that time. Pleas in abatement, merely, must be filed within the first four days of the term at which the action is entered. Rule 9. And special pleas, generally, within ninety days from the commencement of the term. Rule 7. A plea of non-tenure or disclaimer of the whole or part of

Tappan *v.* Tappan.

the land demanded, may be filed after the term at which the action is entered, upon payment of the costs of the suit, up to the time of filing.    Rule 18.

These pleas cannot be regarded as the general issue ; nor yet are they formal pleas in abatement, in the most strict and technical sense of the term ; but still they are in the nature of pleas in abatement.    Story's Pld. 382, 383 ; *Wheeler* v. *Bates,* 1 Foster's Rep. 460; *Sperry* v. *Sperry,* 8 N. H. Rep. 477 ; *Wilson* v. *Webster,* 6 N. H. Rep. 419. The pleas not being the general issue, the amendment of the case was material, for it shows that the pleas were received, not as matter of right, but by order of the court, under its discretion.    And this discretion the court had the power to exercise.    Can the amendment, then, be considered ?

In our practice, under the present judiciary system, cases are drawn by the judge holding the common pleas, either at the term, or as soon thereafter as may be.    They are considered as drawn at the term, and generally should be ; although there are instances where it would be extremely inconvenient, if not impracticable, either for the court or counsel, to attend to it then.    It is the practice, too, for the judge who transferred the case to make amendments of the same at any time before a decision is pronounced by this court. The amendment is treated as made *nunc pro tunc,* and no wrong is experienced from this practice, that we are aware of.    The object is to get at the truth of the case before it is finally settled.

And it appears to us that no substantial objection exists against the making of this amendment by the judge who tried the cause.    He had retired from office, it is true, but the act of making the amendment was no judgment or decision of a court, and no pretence of it, but simply a clerical correction of the history of the case as given by him at the term.    This exception must be overruled.

The trial of the cause was finally had upon the issue

whether the defendants were or not joint tenants of the free-
hold. This issue was tendered by the plaintiff and joined
by the defendants; and upon the trial several questions
were raised. The first and principal one, however, and that
upon which the others mainly depend, relates to the admis-
sion of the defendants' evidence of title.

It appeared that both parties claimed title derived from
John Tappan of East Kingston; the plaintiff by deed and
the defendants by will. *Prima facie* the better title was in
the plaintiff. But that was not the question for the jury;
the issue was whether the defendants were, at the time of
the commencement of the suit, joint tenants of the prem-
ises; and as tending to negative that issue on the part of
the defendants, they were permitted to introduce the title
under which they claimed, which went to show that one of
them was owner of part of the premises and another of the
remainder. Was this evidence admissible?

In *Bailey* v. *Carleton*, 12 N. H. Rep. 15, *Parker*, C. J.,
says that the general rule that where a party having color
of title enters into the land conveyed, he is presumed to en-
ter according to his title, and thereby gains a constructive
possession of the whole land embraced in his deed, seems
to be settled by the current of authorities. And this posi-
tion is sustained by many authorities, both in our own re-
ports and others. *Riley* v. *Jameson*, 3 N. H. Rep. 27; *Lund*
v. *Parker*, 3 N. H. Rep. 49, and cases cited. The pre-
sumption is that he enters and occupies according to his
title.

It is true that in the cases alluded to the question did not
arise upon issues like the present one; but, upon reflection,
we do not discover any reason why the rule may not be ap-
plied to the issue before us. There was no question of title
to be settled, and whether the defendants were in as wrong-
doers or not, could not arise on the issue. The only point
for the consideration of the jury was, how did the defend-
ants occupy the premises; as joint tenants, or otherwise? and

as tending to show the character of that occupation the deeds to them of the premises were permitted to be read to the jury.

Were we to take into consideration the nature of the plaintiff's and defendants' titles, the evidence would be inadmissible, for the plaintiff having the better title, the defendants could not qualify their possession as wrong-doers by showing by their deeds that they held in severalty. But that was not the question. The plaintiff tendered the sole issue of possession by the defendants as joint tenants, and that being the only issue, we think the evidence was competent. It had a tendency to show the character and extent of the occupation.

With this view of the evidence, the instructions of the court were well enough, with the exception of the last clause; but that clause we all think was erroneous. Writs of entry can be maintained only against tenants of the freehold, either by right or by wrong. It was therefore material that the replication should assert that the tenants were in jointly as of freehold. But to maintain the issue it was immaterial what the character of such freehold estate should prove to be. Freehold estates consist either of estates for a life or lives, or for some uncertain period, which may extend for one or more lives ; or estates of inheritance which may be estates in fee-simple absolute, estates in fee-conditional, or estates in fee-tail. All these are estates of freehold ; and proof of either of them would be sufficient to maintain the issue on the part of the plaintiff. Besides this, it was wholly immaterial whether on this issue the tenants were joint tenants of the premises by right or by wrong. Disseizors cannot qualify their own wrong by alleging that they have entered claiming a less estate than a fee. But a demandant may show that they have committed a joint disseizin upon him, and are in the joint occupation, claiming a joint interest in the property, by which facts they are made joint tenants in fee, as to him, whatever may be their contracts as to

Tappan *v.* Tappan.

the property, among themselves, or whether they have any such contract or not. It was, therefore, sufficient for the demandant to prove that he owned and was entitled to the possession of the demanded premises, and that the tenants were in the joint possession, claiming the property. He was not bound to show that they were in possession in virtue of any arrangement or agreement that they should occupy for the life of any one; yet this clause of the instructions, as the court understand it, was, in effect, a charge to the jury that their verdict should be for the defendants, unless they should find that the tenants were in possession of the premises, claiming under a common title, or in virtue of an agreement or arrangement among them that the premises were to be occupied or improved by them in common, for their joint benefit, either for the lifetime of their father or of some other person. Whereas the jury were clearly bound to return a verdict for the plaintiff if they found the defendants jointly in possession, without any common title or pretence of title, and without any understanding as to the length of their occupancy. If it had been said a common title by joint disseizin, or by any conveyance to them in fee or for life, it might have answered. But in the limited manner in which it was stated to the jury, it was erroneous; and although the evidence is not so fully reported as to show conclusively the effect of the instructions upon the jury, yet it appears to us that the verdict may have turned upon this branch of the instructions. It is very probable that the matter was distinct enough in the mind of the court at the time of the charge, but it does not so appear in the case. As reported to us, this branch of the charge was wrong, and the verdict must consequently be set aside, and a

*New trial granted.*